IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ACCESS POINT FINANCIAL, LLC,

    Plaintiff,

        v.

JEFF KATOFSKY,
*individually*, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:21-CV-3176-TWT

## OPINION AND ORDER

This is a breach of contract action. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 43] and the Plaintiff's Motion to Substitute [Doc. 49]. For the reasons set forth below, the Plaintiff's Motion for Summary Judgment [Doc. 43] is GRANTED, and the Plaintiff's Motion to Substitute [Doc. 49] is GRANTED.

## I.  Background[1]

This case arises from various loans made by the Plaintiff Access Point Financial, LLC ("APF") to entities associated with the Defendants and subsequent defaults on those loans. (Pl.'s Statement of Undisputed Material Facts ¶¶ 1–3, 28). In May 2018, the Defendant Jeff Katofsky, along with a

---

[1] The operative facts on the Motion for Summary Judgment are taken from the parties' Statements of Undisputed Material Facts and the responses thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

business partner, formed Hip Hip, Huron!, LLC ("HHH") to own and operate the historic Hotel Harrington in Port Huron, Michigan. (Defs.' Statement of Additional Undisputed Material Facts ¶ 1). Later that year, the Plaintiff entered into a loan agreement with HHH, under which the Plaintiff agreed to lend HHH $6,200,000 (the "HHH Loan") to finance a construction project for the Hotel Harrington. (Pl.'s Statement of Undisputed Material Facts ¶ 1).[2] HHH executed a promissory note (the "HHH Note") that it delivered to the Plaintiff in connection with the HHH Loan. (*Id.* ¶ 2). The Defendants unconditionally guaranteed the HHH Note pursuant to a guaranty agreement dated November 9, 2018 (the "HHH Guaranty Agreement").[3] (*Id.* ¶ 3).

The Defendants claim that in late 2019 and early 2020, the Defendant Jeff Katofsky negotiated a modification of the HHH Loan with the Plaintiff that was never reduced to a writing. (*Id.* ¶ 19). The exact terms of the alleged loan modification are uncertain. (*Id.* ¶ 20; Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 20). The Defendants also claim they forewent

---

[2] The Defendants dispute this statement of material fact arguing that they entered into a loan agreement with APF, *Inc.*, not APF, *LLC*. (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts ¶ 1). The Court agrees with the Plaintiff that it has submitted sufficient evidence to establish that APF, Inc. converted into APF, LLC on December 31, 2018, and that the Defendants have failed to set forth evidence that would dispute such a conversion. (Reply Br. in Supp. of Pl.'s Mot. to Subs., at 11).

[3] The Defendant Jeff Katofsky also guaranteed four other loans that the Plaintiff made to other limited liability companies that he managed, including Planet Clair LLC and On the Vine LLC. (Pl.'s Statement of Undisputed Material Facts ¶ 8). The parties have reached an agreement regarding the loans at issue with Planet Clair and On the Vine. (*See* Doc. 27).

refinancing opportunities in reliance on the alleged loan modifications that the Plaintiff and the Defendant Katofsky reached. (Defs.' Countercls. ¶ 12). The Plaintiff alleges that HHH defaulted on the HHH Note when it failed to make the payment due on March 2, 2020. (Pl.'s Statement of Undisputed Material Facts ¶ 28).

On February 1, 2021, the Plaintiff, the Defendants, and HHH entered into a Discounted Payoff Agreement regarding the HHH Loan. (*Id.* ¶ 42). The Plaintiff contends that the HHH Discounted Payoff Agreement mistakenly identifies its affiliate company, HDDA, LLC ("HDDA"), as the lender on the HHH Note. (*Id.* ¶ 43). Under the HHH Discounted Payoff Agreement, HHH and the Defendants "acknowledge[d] and agree[d] that the indebtedness evidenced by the [HHH] Loan Documents for such Borrower's Loan is due and owing to Lender . . . and further acknowledge[d] and agree[d] that each of the Loan Documents, is valid and binding and fully enforceable according to its terms." (*Id.* ¶ 46 (alterations in original)). HHH paid $50,000 in earnest money under the HHH Discounted Payoff Agreement, but the Plaintiff contends that HHH and the Defendants defaulted on their obligations under the HHH Discounted Payoff Agreement by failing to make the payoff amounts provided in the agreement. (*Id.* ¶¶ 49–50).

On July 27, 2021, the Plaintiff provided a notice of default under the HHH Loan to HHH and the Defendants. (*Id.* ¶ 61). Nine days later, the Plaintiff filed the present action seeking damages from the Defendants for

breach of the HHH Guaranty Agreement. (*Id.* ¶ 63). Then, on August 25, 2021, the Plaintiff and the Defendants executed a Pre-Negotiation Agreement in which the parties agreed that the HHH Loan was in full effect. (*Id.* ¶ 66). On November 30, 2021, the Defendants answered and pleaded five counterclaims against the Plaintiff. Finally, on December 30, 2021, the Plaintiff assigned its interest in the HHH Loan to HDDA. (*Id.* ¶ 67). The Plaintiff now moves for summary judgment as to its claim for breach of the HHH Guaranty Agreement and as to the Defendants' five counterclaims.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

### III.   Discussion

The Plaintiff moves for summary judgment as to its claim for breach of the HHH Guaranty Agreement and as to the Defendants' five counterclaims. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 1). The Plaintiff also moves to substitute HDDA as the Plaintiff in the present action. (Br. in Supp. of Pl.'s Mot. to Subs., at 1). The Defendants oppose both of the Plaintiff's motions, arguing that summary judgment and substitution are inappropriate for various reasons. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 1; Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Subs., at 1–2). The Court first considers the Plaintiff's Motion to Substitute and then turns to the merits of the Plaintiff's Motion for Summary Judgment.

### A.  Motion to Substitute

The Plaintiff moves to substitute HDDA as the Plaintiff in the present case because it assigned its interest in the HHH Loan to HDDA as of December 30, 2021. (Br. in Supp. of Pl.'s Mot. to Subs., at 1–2 (citing Doc. 49-1)). The Defendants respond with multiple reasons for why the Plaintiff's Motion to Substitute should be denied. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Subs., at 8–16). Primarily, the Defendants argue that substitution is improper because the Plaintiff assigned its interest in the HHH Note to HDDA before it filed the present action. (*Id.* at 8). In support of this proposition, the Defendants rely on the draft and final versions of the HHH Discounted Payoff Agreement that named HDDA as the lender on the HHH Loan. (*Id.* at 8–9; *see also* Katofsky

Decl. ¶¶ 40–46, Exs. 5–11). The Defendants also contend that HDDA accepted a $50,000 payment from the Defendants in consideration of the HHH Discounted Payoff Agreement. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Subs., at 9). They argue that such an acceptance demonstrates that the Plaintiff's documents assigning the HHH Note to HDDA in December 2021 are either a sham or a redundant assignment. (*Id.*).

In reply, the Plaintiff takes issue with the Defendants' "speculative" theories and argues that the HHH Discounted Payoff Agreement mistakenly identified HDDA as the lender. (Reply Br. in Supp. of Pl.'s Mot. to Subs., at 3; *see also* Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 6–7 (citing *100 Lakeside Trail Tr. v. Bank of Am., N.A.*, 342 Ga. App. 762, 766 (2017))). In support of its mistake theory, the Plaintiff references a March 2021 email that its counsel sent to the Defendants notifying them of the mistake and requesting that they authorize a corrected version that identified the Plaintiff as the lender, instead of HDDA. (*Id.* at 4 (citing Doc. 44-17, at 2)). The Defendants later responded to that email objecting to the Plaintiff's substitution request. (Doc. 51-4, at 2). Finally, the Plaintiff argues that even if substitution under Rule 25(c) did not apply, the Court could still join HDDA as the real party in interest under Rule 17(a)(3). (*Id.* at 4 n.5).

Under Federal Rule of Civil Procedure 25(c), "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or

joined with the original party." Fed. R. Civ. P. 25(c). "The decision whether to allow substitution is discretionary." *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 610 (11th Cir. 1984). "Rule 25(c) applies only to transfers of interest occurring during the pendency of litigation and not to those occurring before the litigation begins." *Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1407 (11th Cir. 1998). Finally, under Federal Rule 17(a)(3), a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.").

As a preliminary matter, the Court finds nothing in the record suggesting that the documents assigning the HHH Note to HDDA are a sham or that the Plaintiff misrepresented to the Defendants that HDDA was the assignee of the HHH Note in negotiating the Discounted Payoff Agreement, as the Defendants contend. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Subs., at 9 n.2). Indeed, the language in the initial email exchange between the Plaintiff's counsel and the Defendants indicated that the Plaintiff *might* assign its interest in the HHH Note to HDDA. (Doc. 52-1, at 201 ("[F]or certain internal

reasons, Access Point *may* assign this loan to its sister entity, HDDA, LLC . . . ." (emphasis added))). Nothing affirmatively indicates that the Plaintiff had already transferred the loan. (*See id.*). In addition, the March 2021 email that the Plaintiff's counsel sent to the Defendants, notifying them of the mistake in the Discounted Payoff Agreement, corroborates its position at present. (Doc. 44-17, at 2).[4]

Moreover, the Court agrees with the Plaintiff that even if a genuine dispute existed as to whether the Plaintiff or HDDA held the HHH Note at the commencement of the present action, such a dispute would be immaterial considering the Court's discretion to order substitution of HDDA under Federal Rule 17(a)(3). (Reply Br. in Supp. of Pl.'s Mot. to Subs., at 4 n.5). Accordingly, the Court finds substitution of HDDA for the Plaintiff to be warranted, as to the Plaintiff's claims against the Defendants. The Plaintiff will remain a party to the case as a counterclaim defendant to the Defendants' five counterclaims. (Reply Br. in Supp. of Pl.'s Mot. to Subs., at 5 n.6).

The Court agrees with the Plaintiff that the Defendants fail to show any prejudice due to HDDA's substitution at present. (*Id.* at 6–8). The Defendants had notice of the Plaintiff's December 2021 transfer of its interest in the HHH

---

[4] Because the Court concludes that the transfer of the Plaintiff's interest in the HHH Note to HDDA occurred in December 2021, after the commencement of the present litigation, the Defendants' reliance on *Clark v. Calhoun Nat. Bank*, 53 Ga. App. 691, 693 (1936), is unavailing. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Subs., at 12–14).

Note to HDDA as early as February 2, 2022, and the Plaintiff also provided the same information on July 5, 2022, in response to the Defendants' interrogatory requesting identification of assignments and transfers of the HHH Note. (*Id.* (citing Doc. 51-4, at 3, and Doc. 53-2, at 2–3)). Despite this notice, the Defendants declined to take any depositions of representatives of the Plaintiff or HDDA. And though the present case is at a "late point in the proceedings," it is not a case where substitution would "possibly necessitate the reopening of discovery" or require postponing of a scheduled trial. *Barker v. Jackson Nat. Life Ins. Co.*, 163 F.R.D. 364, 366 (N.D. Fla. 1995). Nor would substitution at present "be highly disruptive of the orderly administration of the litigation." *Nat'l Indep. Theatre*, 748 F.2d at 610. Rather, substitution of HDDA "is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics*, 106 F.3d at 20. Under these circumstances, the Court cannot conclude that the Defendants would be prejudiced by substitution. Thus, the Court orders substitution of the Plaintiff for HDDA as to the Plaintiff's claims against the Defendants.[5]

---

[5] The Defendants' arguments in Sections E and F of their response brief are also unavailing. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. to Subs., at 14–16). The Court agrees with the Plaintiff that the documents assigning the HHH Note to HDDA are sufficient to warrant its substitution in the present case and that the HHH Guaranty Agreement allows for the guaranty's assignment. (Reply Br. in Supp. of Pl.'s Mot. to Subs., at 10–13). And the Court also agrees with the Plaintiff that HDDA's filing of the Motion to Substitute, as opposed to the Plaintiff doing so, does not warrant denial of the motion. (*Id.* at 13–15).

### B. Motion for Summary Judgment

The Plaintiff argues that it is entitled to summary judgment on Count II of the Complaint, alleging breach of the HHH Guaranty Agreement and claiming an award of attorneys' fees, and on all five counterclaims brought by the Defendants, alleging breach of contract, negligence, fraud, promissory estoppel, and seeking a declaratory judgment. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 1). The Defendants oppose the Plaintiff's motion, arguing that the Plaintiff improperly relies on undisclosed witnesses and claiming defenses of mutual departure and impossibility due to the COVID-19 pandemic. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 1). The Court addresses first the alleged breach of the HHH Guaranty Agreement, then the Defendants' five counterclaims, and finally the Plaintiff's claim for attorneys' fees.

### 1. Breach of the HHH Guaranty Agreement

The Plaintiff first argues that it is entitled to summary judgment on its claim that the Defendants breached the HHH Guaranty Agreement and that it is owed $8,702,815.17 on the HHH Loan, exclusive of costs and attorneys' fees. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 15–16). In response, the Defendants argue that the Plaintiff's nondisclosure of witnesses, the parties' mutual departure from the terms of the HHH Loan, and the COVID-19 pandemic all preclude summary judgment at present.[6] (Defs.' Resp. Br. in

---

[6] For the same reasons as concluded above regarding the Plaintiff's Motion to Substitute, the Defendants' argument in Section B of its brief—that

10

Opp'n to Pl.'s Mot. for Summ. J., at 8–12, 15–18, 20–24). The Court addresses each of these defenses and the Plaintiff's replies thereto in turn.

### a. Nondisclosure of Witnesses

The Defendants first argue that summary judgment should be denied because the Plaintiff relies on evidence from witnesses who were undisclosed to the Defendants during discovery and the nondisclosure caused harm to the Defendants. (*Id.* at 8–12 (citing *Faulk v. Volunteers of Am.*, 444 F. App'x 316, 318 (11th Cir. 2011))). In reply, the Plaintiff argues that its reliance on the Schachat and Shaw Declarations was harmless because it disclosed the corporate entities that Schachat and Shaw represented but the Defendants declined to depose any representatives from those entities. (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 1 (citing *Star2Star Commc'ns, LLC v. AMG Grp. of Brunswick, LLC*, 2022 WL 1157776, at *3 (11th Cir. Apr. 19, 2022))).

Under Federal Rule of Civil Procedure 26(a)(1)(A), a party must disclose the names of individuals likely to have discoverable information that the disclosing party will use to support its claims and/or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). If a party fails to disclose such information, a court may prohibit the party from using the information as evidence in support of a motion, unless the failure to do so was substantially justified or harmless. Fed. R. Civ. P.

---

whether the Plaintiff held the HHH Note at the commencement of this case is a disputed question of material fact—fails. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 12–15). The Defendants' reliance on *Clark* in Section C of its brief also fails, for the same reasons as concluded above. (*Id.* at 15).

37(c)(1). A "failure to disclose is harmless when there is no prejudice to the party entitled to receive the disclosure." *Hammonds v. Jackson*, 2015 WL 12867065, at *3 (N.D. Ga. Mar. 16, 2015) (quotation marks omitted), *adopted by* 2015 WL 12866453 (N.D. Ga. May 18, 2015), *aff'd* 628 F. App'x 716 (11th Cir. 2016). Under Eleventh Circuit precedent, district courts have broad discretion in determining whether a failure to disclose was harmless. *Great Am. Ins. Co. v. Mueller*, 2022 WL 2377391, at *3 (11th Cir. June 30, 2022); *Long v. E. Coast Waffles, Inc.*, 762 F. App'x 869, 870 (11th Cir. 2019) ("Although Rule 37 certainly permits a district court to exclude a witness based on a party's noncompliance with Rule 26, district courts are entitled to broad discretion in managing pretrial discovery matters.").

The Court agrees with the Plaintiff that the nondisclosure of Schachat and Shaw as witnesses and the nondisclosure of certain documents attached as exhibits to their Declarations were harmless. Courts have regularly held that when a party fails to depose an unnamed representative of a disclosed corporate entity, such a circumstance cannot constitute harm that would warrant exclusion of a witness declaration under Rule 37(c)(1). *See, e.g.*, *Star2Star*, 2022 WL 1157776, at *3; *Barron v. EverBank*, 2019 WL 1495305, at *3–4 (N.D. Ga. Feb. 7, 2019), *adopted by*, 2019 WL 1996697 (N.D. Ga. Mar. 15, 2019). The Defendants argue that their alleged prejudice cannot be cured because discovery has closed. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 12). But as the Plaintiff notes, the Defendants were fully aware of the

12

corporate entities that Schachat and Shaw represented and thus cannot claim to be surprised by declarations from representatives of those entities, including the Plaintiff, HDDA, and Trimont (the loan servicing company for the HHH Loan). (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 2–3). Finally, the Court is unpersuaded that the Defendants are prejudiced by nondisclosure of the exhibits attached to the Schachat and Shaw Declarations.[7] The exhibits are documents that the Defendants should have expected would be used in the litigation considering their defenses and counterclaims to the Plaintiff's allegations. (*Id.* at 4). Thus, the Defendants cannot avoid summary judgment on this ground.

### b. Mutual Departure

The Defendants then argue that summary judgment should be denied because questions of fact exist as to whether the parties mutually departed

---

[7] The Defendants take particular issue with Exhibit C to the Shaw Declaration, claiming that the Plaintiff's failure to produce was "particularly prejudicial because it is APF's entire basis for its damages calculations." (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 9 n.2). But the Defendants do not challenge the accuracy of any of the calculations in Exhibit C under the terms of the HHH Note. (*See id.* at 9). Considering that the Defendants had the HHH Loan documents at their disposal in preparing their response brief to the Plaintiff's Motion for Summary Judgment, the Court presumes the Defendants' take no issue with the calculations' accuracy. As for the attachments to the Schachat Declaration with which the Defendants take issue, the majority of the documents were indeed signed by the Defendant Jeff Katofsky and the other exhibits were communications involving payoff demands pertaining to the Planet Clair loans of which the Defendants were aware. (*Id.*) The Court concludes the alleged nondisclosure of these documents was not prejudicial to the Defendants.

from the terms of the HHH Loan. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 15–18). The Plaintiff makes various arguments in reply, including that the Defendants' waived any mutual departure defense by failing to plead it in their Answer and that the defense fails as a matter of law because they offered (and the Plaintiff received) no consideration for the departure. (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 9–11).

Regarding waiver, the Court finds that the Defendants did not waive their mutual departure argument. This Court has established that a defendant must "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." *Mt. Hawley Ins. Co. v. Am.'s Home Place, Inc.*, 2019 WL 2004134, *3 (N.D. Ga. Mar. 19, 2019). Here, in their Seventh Defense, the Defendants gave the Plaintiff fair notice of their intent to defend on the ground of mutual departure regarding the parties' loan modification discussions in early 2020, even if the Defendants' Answer did not specifically use the term "mutual departure." (*See* Ans., at 3). The Defendants presented affirmative evidence establishing that they relied on representations by the Plaintiff during the pending loan modification period, where the Plaintiff instructed the Defendants not to worry about any default notices. (Defs.' Statement of Additional Undisputed Material Facts ¶ 20). Such an alleged suspension of the HHH Loan obligations was sufficient notice to avoid waiver of the defense. Accordingly, the Plaintiff cannot defeat the Defendants' mutual departure

14

theory on waiver grounds.

The Plaintiff then argues that the Defendants' mutual departure defense fails as a matter of law because the Plaintiff received no consideration for the departure. (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 10). Georgia law defines the doctrine of mutual departure as follows:

> Where parties, in the course of the execution of a contract, depart from its terms *and pay or receive money under such departure*, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.

O.C.G.A. § 13-4-4 (emphasis added). "Further, although mutual departure ordinarily requires the receipt or payment of money, slight consideration may support a departure from the contractual terms." *Reynolds v. CB&T*, 342 Ga. App. 866, 869 (2017). Finally, the issue of whether parties to a contract have mutually departed from a contract's terms is ordinarily a jury issue. *Snyder v. Time Warner, Inc.*, 179 F. Supp. 2d 1374, 1380 (N.D. Ga. 2001).

The Defendants argue that their payment for appraisals in anticipation of the pending loan modifications and their $50,0000 payment under the HHH Discounted Payoff Agreement both constitute adequate consideration to support their defense of mutual departure. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 18). The Plaintiff responds that the appraisals were for the benefit of HHH and the Defendants, and thus are insufficient consideration, and that the earnest money paid with the Discounted Payoff

Agreement cannot constitute sufficient consideration for a departure from the HHH Loan because it was consideration for a separate agreement. (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 10–11). The Plaintiff also argues that the Defendants should be estopped from claiming mutual departure because they acknowledged and agreed, in the Discounted Payoff Agreement, that their indebtedness and default interest were owed under the HHH Loan. (*Id.* at 11 (citing *Ameris Bank v. All. Inv. & Mgmt. Co., LLC*, 321 Ga. App. 228, 231 (2013).

> [U]nder the doctrine of "estoppel by silence," a debtor waives any defenses to payment of a promissory note, including fraud, by virtue of its renewal of the note after it has knowledge of those defenses. The Supreme Court has extended that doctrine to individual guarantors of a corporate obligation who attempt to assert a defense as to which they had knowledge when they signed a renewal of the corporation's obligation.

*Ameris Bank*, 321 Ga. App. at 231 (citations omitted). The Court finds that even if the Defendants have created a genuine dispute of fact as to the mutual departure issue (a conclusion the Court declines to make), the doctrine of estoppel by silence bars their reliance on the mutual departure defense. *See id.* Thus, the Defendants' mutual departure defense fails as a matter of law.[8]

### c. Impossibility, Impracticability, and Frustration

Finally, the Defendants argue that summary judgment should be denied

---

[8] For the same reasons, the Defendants' promissory estoppel defense, asserted in Section E of its response brief, also fails as a matter of law under *Ameris Bank*. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 18–20; Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 11–13).

because questions of fact exist as to whether the COVID-19 pandemic suspended the parties' obligations under the HHH Note. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 20–24). They rely specifically on the defenses of impossibility of performance, impracticability of performance, and frustration of purpose. (*Id.*). In response, the Plaintiff argues that the COVID-19 pandemic did not suspend the Defendants' obligations, noting that numerous courts have rejected similar arguments under analogous factual circumstances. (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 13–14). The Plaintiff also relies on the fact that "HHH and the Defendants ratified their obligations under the HHH Loan Documents twice after Michigan lifted its state of emergency." (*Id.* at 14 (citing Doc. 44-16 § 2, and Doc. 44-22)).

The Court agrees with the Plaintiff that the Defendants cannot avoid summary judgment relying on the defenses of impossibility, impracticability, and frustration of purpose at present. To begin with, the Defendants' acknowledgement of their obligations under the HHH Note in the Discounted Payoff Agreement and Pre-Negotiation Agreement, executed in 2021 after the start of the pandemic, preclude their reliance on the defenses at present. *See Ameris Bank*, 321 Ga. App. at 231; (Doc. 44-16 § 2; Doc. 44-22). The Court also finds persuasive the supplemental authority submitted by the Plaintiff in which the Georgia Court of Appeals rejected a debtor's reliance on the same defenses under similar circumstances. *See PraultShell, Inc. v. River City Bank*, 366 Ga. App. 70, 73–74 (2022).

17

The Defendants argue that *PraultShell* does not govern the present case because (1) the promissory note at issue was executed after the COVID-19 restrictions began, (2) the claimed reasoning for impossibility was "vague and presumed," and (3) the case is only relevant as to the suspension of repayment obligations. (Doc. 59, at 1–3). The Court disagrees. As a preliminary matter, the Defendants cite no legal authority in support of their arguments. Further, that the promissory note in *PraultShell* was issued after the pandemic restrictions began does not change the analysis of the applicability of the asserted defenses, as described by the Georgia Court of Appeals. First, the state of Michigan's COVID-19 orders barring construction did not render impossible HHH's payments under the HHH Loan. *See id.*; *see also Hampton Island, LLC v. HAOP, LLC*, 306 Ga. App. 542, 547–48 (2010) ("[T]he fact that one is unable to perform a contract because of his inability to obtain money . . . will not ordinarily excuse nonperformance, in the absence of a contract provision in that regard."). Even if the state of Michigan's COVID-19 restrictions prohibited construction on the Hotel Harrington site, such a prohibition did not prevent HHH from fulfilling its payment obligations under the HHH Loan. Second, the doctrine of impracticability is inapplicable here because the dispute arises outside the context of the sale of commercial goods. *See Calabro v. State Med. Educ. Bd.*, 283 Ga. App. 113, 115 (2006). And third, the frustration of purpose doctrine is also inapplicable because the Plaintiff did

18

not cause the Defendants' nonperformance. *See L.D.F. Fam. Farm, Inc. v. Charterbank*, 326 Ga. App. 361, 366 (2014). Accordingly, the Defendants cannot avoid summary judgment under defenses of impossibility, impracticability, and frustration of purpose.

In conclusion, the Defendants have failed to present affirmative evidence showing a genuine dispute of material fact that would preclude summary judgment as to the Plaintiff's claim for breach of the HHH Guaranty Agreement at present. The Defendants have also failed to contest (or even address) any of the Plaintiff's calculations as to the appropriate damages award for their breach under the HHH Loan. Accordingly, the Court concludes that the Plaintiff is entitled to its requested award of $8,702,815.17, as of September 30, 2022.

### 2. The Defendants' Counterclaims

In opposition to the Plaintiff's Motion for Summary Judgment as to the Defendants' five counterclaims, the Defendants argue generally that the Plaintiff cannot rely on the HHH Discounted Payoff Agreement's release because HDDA was the lender under that agreement. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 24–25). In reply, the Plaintiff contends that the "Defendants do not address any of the other arguments APF asserted why Defendants' counterclaims and defenses fail and, therefore, have abandoned them." (Reply Br. in Supp. of Pl.'s Mot. for Summ. J., at 14–15). The Court agrees that the Defendants have failed to specifically address any of the

Plaintiff's arguments regarding the Defendants' counterclaims, but the Court nonetheless briefly reviews the merits of the five counterclaims in turn.

### a. Breach of Contract

The Plaintiff argues that it is entitled to summary judgment on the Defendants' breach of contract counterclaim, which alleges that the Plaintiff "breached the discounted payoff agreements by stalling and failing to timely provide written payoff statements." (Br. in Supp. of Pl.'s Mot. for Summ. J., at 19–20; Defs.' Countercls. ¶ 27). The Plaintiff contends (1) that the Defendants fail to specify a contractual provision that the Plaintiff breached and (2) that the record is devoid of evidence showing that it failed to timely provide requested payoff statements with respect to the HHH Loan. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 19–20). In support of this contention, the Plaintiff relies on the deposition testimony of Defendant Jeff Katofsky, arguing that Katofsky admitted that the Plaintiff did not prevent the Defendants from performing under the HHH Discounted Payoff Agreement. (*Id.* at 20 (citing Katofsky Dep., at 119:6–119:23)). The Plaintiff argues that the Defendants appear to base their breach of contract counterclaim on conduct related to the Planet Clair and On the Vine Discounted Payoff Agreements, for which the Plaintiff was released from liability under a Deed in Lieu of Foreclosure Agreement. (*Id.*). The Court agrees with the Plaintiff that the Defendants have failed to specifically identify which provision of the HHH Discounted Payoff Agreement the Plaintiff allegedly breached and thus have failed to carry their

20

burden to present affirmative evidence showing a genuine dispute of material fact exists as to their breach of contract counterclaim. Accordingly, the Plaintiff is entitled to summary judgment on the Defendants' breach of contract counterclaim.

### b. Negligence

The Plaintiff next argues that it is entitled to summary judgment on the Defendants' negligence counterclaim, which alleges that the Plaintiff breached a duty it owed them to provide timely payoff statements upon request. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 20; Defs.' Countercls. ¶ 31). Specifically, the Plaintiff claims that absent a separate legal duty, independent of the HHH Note and arising by statute or common law, the Defendants cannot sustain a tort counterclaim against them. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 20 (citing *Oconee Fed. Sav. & Loan Ass'n v. Brown*, 351 Ga. App. 561, 573–74 (2019))). The Court agrees with the Plaintiff. The Defendants have failed to carry their burden to present affirmative evidence showing a genuine dispute of material fact remains as to the existence of a separate legal duty to timely provide payoff statements upon request. The Defendants also fail to refute the Plaintiff's argument that the record does not contain any evidence showing the Plaintiff failed to timely provide requested payoff statements. Under these circumstances, the Plaintiff is entitled to summary judgment on the Defendants' negligence counterclaim.

### c. Fraud and Promissory Estoppel

The Plaintiff then argues that it is entitled to summary judgment on the Defendants' fraud and promissory estoppel counterclaims, which allege that they relied on misrepresentations made by the Plaintiff regarding modification of the HHH Loan. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 21–22; Defs.' Countercls. ¶¶ 36, 40). The Plaintiff argues that the Defendants' allegations are "vague and indefinite" and fail to identify terms of the purported promise to modify the HHH Loan. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 22 (citing *Bridges v. Reliance Tr. Co.*, 205 Ga. App. 400, 402 (1992))). "A promise to make a loan with no specification of the interest rate or maturity date is not enforceable and will not support an action for fraud," and the doctrine of promissory "estoppel applies to representations of past or present facts and not to promises concerning the future, especially where those promises concern unenforceably vague future acts." *Bridges*, 205 Ga. App. at 402 (quotation marks and citations omitted). The Court agrees with the Plaintiff that the Defendants have failed to carry their burden to present affirmative evidence showing a genuine dispute of material fact exists as to the alleged misrepresentations made by the Plaintiff regarding modification of the HHH Loan. Thus, the Plaintiff is entitled to summary judgment on the Defendants' fraud and promissory estoppel counterclaims.

### d. Declaratory Judgment

Finally, the Plaintiff argues that it is entitled to summary judgment on the Defendants' declaratory judgment counterclaim, which seeks a declaration that the HHH Loan documents are unenforceable because the COVID-19 pandemic frustrated the purpose of the agreement or rendered performance under the agreement impossible or impracticable. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 21–22; Defs.' Countercls. ¶ 47). For the reasons outlined above addressing the doctrines of impossibility, impracticability, and frustration of purpose as defenses to the Plaintiff's claim for breach of the HHH Guaranty Agreement, the Defendants' reliance on those doctrines in their declaratory judgment counterclaim also fail. Thus, the Plaintiff is entitled to summary judgment on the Defendants' declaratory judgment counterclaim.

### 3. Attorneys' Fees

The Plaintiff argues that under the HHH Loan and O.C.G.A. § 13-1-11, it is entitled to attorneys' fees in the amount of $819,362.82, as of September 30, 2022. (Br. in Supp. of Pl.'s Mot. for Summ. J., at 16–17). The Defendants respond arguing that subsection (b) of O.C.G.A. § 13-1-11 governs the Plaintiff's claimed damages because the fee award sought exceeds $20,000. (Defs.' Resp. Br. in Opp'n to Pl.'s Mot. for Summ. J., at 25). In reply, the Plaintiff contends that because the Defendants have not yet petitioned the Court seeking a determination as to the reasonableness of the attorneys' fees, it is entitled to an award based on the statutory formula. (Reply Br. in Supp.

23

of Pl.'s Mot. for Summ. J., at 15). The Court agrees with the Defendants that they may petition the Court, before entry of final judgment, for a determination as to the reasonableness of the Plaintiff's claimed attorneys' fees.

## IV.    Conclusion

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment [Doc. 43] is GRANTED, and the Plaintiff's Motion to Substitute [Doc. 49] is GRANTED. The Plaintiff is DIRECTED to file a Supplemental Brief regarding additional interest and attorney fees to be included in the Final Judgment within 14 days of the date of this Order. The Defendants shall have 14 days from the date that the Plaintiff's Supplemental Brief is filed to respond. The Clerk is DIRECTED to defer entry of a Final Judgment until after entry of an Order setting forth the additional prejudgment interest and attorney fees owed.

SO ORDERED, this ____7th____ day of February, 2023.

Thomas W. Thrash

THOMAS W. THRASH, JR.
United States District Judge